IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JOSE OMAR ORTIZ RICO,**

      Plaintiff,

      v.

**BRAD CAIN, Superintendent; GARTH GULICK, Medical Doctor; VICTOR ISHIDA, Physician Assistant; JUDY GILMORE, Assistant Superintendent**

      Defendants.

Case No. 2:19-cv-01211-MC

**OPINION AND ORDER**

_____

**MCSHANE, District Judge**:

      Plaintiff Jose Omar Ortiz Rico, an inmate at Snake River Correctional Institute (SRCI), brings suit pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs. Defendants Garth Gulick and Victor Ishida are medical providers at the prison. They move for summary judgment.[1] Defs.' Mot. Summ. J., ECF No. 42. Because Plaintiff fails to raise a genuine issue of material fact, Defendants' Motion for Summary Judgment (ECF No. 42) is GRANTED.

//

---

[1] Plaintiff's Complaint includes four claims. Plaintiff's Third Claim was dismissed for failing to allege facts to suggest that Superintendent Cain and Assistant Superintendent Gilmore personally participated in the alleged deprivation of Plaintiff's rights. ECF No. 31

1 – OPINION AND ORDER

**BACKGROUND**[2]

Plaintiff alleges that PA Ishida and Dr. Gulick provided inadequate medical care and exhibited deliberate indifference to his serious medical needs; specifically, his recurring concerns of hematospermia (blood in semen). Compl. 3–4, ECF No. 2.

Plaintiff first complained of hematospermia symptoms at Coffee Creek Intake Center on September 18, 2016. Gulick Decl. ¶ 6, ECF No. 44. Medical personnel ordered tests for gonorrhea and chlamydia, which were negative. Urinalysis showed no blood in the urine. *Id.* ¶ 7. These tests were repeated with the same negative results. *Id.* ¶ 7. Because hematospermia often resolves without treatment, Plaintiff was advised to follow up with medical personnel if his symptoms persisted. *Id.* ¶ 8.

Plaintiff did not follow up until ten months later, on July 29, 2017, when he submitted a Health Services Request for a "testicle problem." *Id.* ¶ 9. PA Ishida subsequently examined Plaintiff on August 15, 2017, with Plaintiff reporting that he had found blood in his semen and was experiencing urinary frequency and hesitation. Ishida Decl. ¶ 9, ECF No. 43. Because the prior urinalysis and tests had come back negative, PA Ishida then conducted both a testicular exam and a digital rectal exam to detect any abnormalities or signs of cancer or tumors. *Id.* ¶ 11. PA Ishida's chart notes indicate that Plaintiff did not express any pain or discomfort during these exams. *Id.* ¶ 11, Ex. 2. PA Ishida's exams revealed no indications of tumors or other masses, but Plaintiff's prostate was enlarged, which PA Ishida concluded was a result of inflammation. *Id.* ¶ 11, Ex. 2. PA Ishida prescribed Septra DS, to treat a likely bacterial infection, and Flomax, to treat the urinary symptoms, *Id.* ¶¶ 11–12. During a follow-up appointment with PA Ishida on

---

[2] The Court views the facts in the light most favorable to Plaintiff, the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).

2 – OPINION AND ORDER

August 25, 2017, Plaintiff reported that he was taking the prescribed medications and that his urinary symptoms had improved. Ishida Decl. ¶ 13. At this appointment, Plaintiff reported that he had not ejaculated to determine whether there was blood in his semen, but he did not report any other symptoms or discomfort, and PA Ishida instructed him to follow up as needed. *Id*.

Plaintiff's next contact with SRCI medical personnel was over a year later, on September 27, 2018, when he submitted a Non-Emergency Health Care Request seeking information about the two medications prescribed by PA Ishida and the type of infection that had been treated. Gulick Decl. ¶ 15. On October 1, 2018, Plaintiff saw Dr. Gulick and reported that he had been finding blood in his semen since receiving treatment in August of 2017, but did not indicate why he had failed to seek follow-up care sooner. *Id*. ¶ 16. At a follow-up appointment on October 11, 2018, Dr. Gulick reviewed Plaintiff's prior lab results with him and explained that all of the prior urinalyses had come back negative. *Id*. ¶ 18. Because Plaintiff was the only witness to the reported hematospermia symptoms, Dr. Gulick requested that he "stay in the infirmary to allow for a private delivery of a sperm sample." *Id*. Plaintiff refused this request, so Dr. Gulick ordered further urinalysis, additional labs for other issues and overall health, and a follow-up appointment. *Id*.

Plaintiff requested treatment again on December 13, 2018, and was scheduled for an appointment three days later, but did not appear. *Id*. ¶¶ 22–23. Nevertheless, Dr. Gulick ordered a testicular ultrasound, which showed no abnormalities or other conditions. *Id*. ¶¶ 24–25. Dr. Gulick did not write any additional orders for Plaintiff "[b]ecause the results of the lab tests and ultrasound were normal, and [Plaintiff] refused to provide a semen sample to confirm the presence of blood." *Id*. ¶ 26.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Negligence and Sovereign Immunity

Plaintiff alleges that PA Ishida was negligent by failing to treat Plaintiff's hematospermia for ten months. Compl. 4.

Under ORS 30.265(3), individually named defendants must be dismissed from state law claims and the State of Oregon substituted in their place, so long as the alleged damages do not exceed the $4,000,000 limit imposed by ORS 30.271. Additionally, a State is immune from suits brought in federal court by its own citizens, as well as citizens of other states, unless the state consents to be sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Under the Oregon Tort Claims Act, the State of Oregon has consented to be sued in Oregon state courts for torts committed by its employees, officers, or agents while acting within the course

4 – OPINION AND ORDER

and scope of their duties, but it has not consented to be sued for those torts in federal court. *Blair v. Toran*, No. CV-99-956-ST, 1999 WL 1270802, at *23 (D. Or. Dec. 2, 1999), *aff'd*, 12 Fed. App'x. 604 (9th Cir. 2001).

Plaintiff has alleged damages of $1,077,995 and, therefore, the State of Oregon must be substituted for PA Ishida in accordance with ORS 30.265(3). Compl. 5. Once this substitution has been made, the State of Oregon must be dismissed as a defendant because the state has raised a sovereign immunity defense. *Cf. Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1021–22 (9th Cir. 2010) (concluding that defendants waived sovereign immunity defense when they failed to raise it during litigation). To the extent Plaintiff brings a state negligence claim, that claim is dismissed without prejudice.

## II. Eighth Amendment

Plaintiff asserts Eighth Amendment violations against PA Ishida and Dr. Gulick. Compl. 3–4. Deliberate indifference to an inmate's "serious medical need" constitutes a violation of the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Deliberate indifference may be shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Penner*, 439 F.3d at 1096. Deliberate indifference requires both an objective risk of harm *and* a subjective awareness of that harm and "may appear when prison officials deny, delay or intentionally interfere with medical treatment . . . ." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *see also Farmer v. Brennan,* 511 U.S. 825, 837 (1994). However, negligent delays do not violate the Constitution. *Frost v. Agnos,* 152 F.3d 1124, 1130 (9th Cir. 1988).

5 – OPINION AND ORDER

**A. PA Ishida**

Plaintiff alleges that PA Ishida was deliberately indifferent to his medical needs by delaying Plaintiff's treatment for hematospermia. Compl. 4. After Plaintiff reported hematospermia symptoms on July 29, 2017, PA Ishida examined Plaintiff twice. At the second appointment on August 25, 2017, PA Ishida could not confirm the presence of hematospermia symptoms and instructed Plaintiff to follow up if symptoms continued; Plaintiff did not. To prove deliberate indifference, a plaintiff must demonstrate not only that the official was aware of facts from which he could infer a substantial risk of harm exists, but also that he actually drew such inference. *Farmer*, 511 U.S. at 837. Since Plaintiff has failed to demonstrate that PA Ishida was aware that Plaintiff was experiencing symptoms of hematospermia between September 19, 2016 and July 29, 2017, no reasonable jury could find that PA Ishida acted with deliberate indifference.

Plaintiff further alleges that PA Ishida was deliberately indifferent to his medical needs by prescribing medication and performing a procedure—without consulting a specialist—that caused "bleeding" and "damage" to Plaintiff's body. Compl. 4. PA Ishida examined Plaintiff, conducted both a testicular and a digital rectal exam, and prescribed medication based on his medical opinion. Plaintiff contends that PA Ishida's actions constituted deliberate indifference because he did not consult a specialist before taking this course of action. PA Ishida stated that he took these steps without consulting a urologist because referral to a urologist for hematospermia is only necessary "if a patient continues to experience hematospermia after a prolonged period and trying several different treatment options or if the patient has an abnormality of the testicles or prostrate that indicates the presence of cancers or tumors." Ishida Decl. ¶ 14; *see also* Gulick Decl. ¶ 19, Ex. 2. "A difference of opinion between a prisoner-patient

6 – OPINION AND ORDER

and prison medical authorities regarding treatment" is not sufficient to sustain a claim of deliberate indifference. *Franklin v. Or. State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Since Plaintiff has alleged nothing more than a difference in medical opinion between himself and PA Ishida, he has failed to demonstrate a deliberate indifference to his serious medical need.

**B. Dr. Gulick**

Plaintiff alleges that Dr. Gulick was deliberately indifferent to his medical needs by delaying Plaintiff's treatment for hematospermia. Compl. 3. At his August 25, 2017, appointment with PA Ishida, Plaintiff was instructed to follow-up with medical personnel if necessary. Plaintiff did not report that he was still suffering from symptoms of hematospermia until over a year later, on October 1, 2018. Since Plaintiff has failed to demonstrate that Dr. Gulick was aware that Plaintiff was experiencing symptoms of hematospermia between August 25, 2017 and October 1, 2018, no reasonable jury could find that Dr. Gulick acted with deliberate indifference.

## CONCLUSION[3]

Defendants' Motion for Summary Judgment (ECF No. 42) is GRANTED. Any remaining state law claims are dismissed without prejudice.

IT IS SO ORDERED.

DATED this  11th   day of February, 2022.

　　　　　　　　　　　　　　　　　　　_____/s/ Michael J. McShane_____
　　　　　　　　　　　　　　　　　　　　　　　　Michael McShane
　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[3] Because the Court is granting summary judgment as to Plaintiff's Eighth Amendment claim, the Court declines to address Defendants' qualified immunity argument.

7 – OPINION AND ORDER